UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO: 24-230 |
| BRANDON ALEXANDER | SECTION: T (3) |

**ORDER AND REASONS**

Before the Court are the following matters submitted in advance of the upcoming trial in this matter: Defendant's Motion in Limine to Exclude or Limit Evidence and Argument Concerning Alleged Flight, High-Speed Pursuit, Foot Pursuit, and Use of a Taser (R. Doc. 82), the Government's Notice of Intent to Introduce Intrinsic Acts Evidence and Extrinsic Acts Evidence Pursuant to Fed. R. Evid. 404(b) (R. Doc. 84), the Government's Motion in Limine for a Determination that Records Meet the Requirements of Federal Rules of Evidence 803(6), 902(4), 902(11), 902(13), and 902(14) (R. Doc. 85), and the Government's Motion in Limine to Exclude Defendant's Self-Serving Hearsay Statements (R. Doc. 89). The Government opposes Defendant's motion. R. Doc. 86. As to the Government's requests, Defendant has filed a single opposition directed principally to the Government's Rule 404(b) notice. R. Doc. 88. The Court considers these related issues together. The Court has carefully considered the parties' arguments, the record, and the applicable law. For the following reasons, Defendant's Motion in Limine (R. Doc. 82) is GRANTED IN PART and DENIED IN PART, with particular rulings DEFERRED; the Government's Motion in Limine concerning records (R. Doc. 85) is GRANTED IN PART and DEFERRED IN PART; and the Government's Motion in Limine to Exclude Defendant's Self-Serving Hearsay Statements (R. Doc. 89) is GRANTED IN PART and DEFERRED IN PART.

**I. BACKGROUND**[1]

On October 10, 2024, the grand jury returned a four-count Indictment, charging Defendant, Brandon Alexander, with multiple federal drug and firearm offenses. R. Doc. 1. The grand jury subsequently returned a four-count Superseding Indictment with additional allegations on February 21, 2025. R. Doc. 21. Count 1 charges possession with the intent to distribute heroin, fentanyl, and buprenorphine (Suboxone) on or about August 10, 2024. *Id.* at pp. 1-2. Count 2 charges knowingly carrying and using a Glock Model 20 pistol during and in relation to the drug-trafficking crime charged in Count 1. *Id.* at p. 2. Count 3 charges possession of said firearm with knowledge of a prior conviction for a crime punishable by imprisonment exceeding one year. *Id.* Count 4 charges willful receipt of the firearm on or about June 23, 2024, while under a felony information. *Id.* at pp. 2-3. Trial is scheduled to begin September 21, 2026. R. Doc. 79.

According to the Government, Louisiana State Police troopers attempted to stop Defendant for traffic violations on August 10, 2024. R. Doc. 84, pp. 1-2; R. Doc. 86, pp. 1-3. The troopers allegedly observed Defendant reaching around the vehicle's cabin before proceeding to pursue him on foot after he left the vehicle. R. Doc. 86, pp. 1-3. Defendant then allegedly attempted to climb a fence, at which point the troopers deployed Tasers and apprehended him. *Id.* The Government estimates that the pursuit and apprehension lasted approximately eighty seconds. *Id.*

The Government further represents that the troopers recovered a bag, drugs, a firearm, and a hat immediately across the fence from where Defendant was apprehended. R. Doc. 86, p. 2. It anticipates testimony that Defendant had been wearing the hat and was cradling items while running toward the fence. *Id.* at pp. 5-6. It also contends that body-camera footage depicts what

[1] Except where otherwise noted, the Court recites the factual background as alleged in the Superseding Indictment (R. Doc. 21).

appears to be a firearm in Defendant's hand as he falls back from the fence after the Taser deployment.[2] *Id.* at p. 9. Additionally, the Government attributes messages recovered from a cell phone found in the vehicle to Defendant.[3] R. Doc. 84, p. 1 n.1.

With his Motion in Limine, Defendant seeks an order from this Court excluding "evidence concerning Defendant's alleged flight from law enforcement, the high-speed pursuit, the subsequent foot pursuit, and/or the deployment of a Taser," except to the "limited extent" that particular portions of such evidence may be "relevant to a specific element of a charged offense" and not substantially outweighed by a danger of unfair prejudice. R. Doc. 82, p. 1. Essentially, Defendant seeks to prevent cumulative or inflammatory detail and argument treating the pursuit as proof of criminal character or as independently sufficient proof of guilt. R. Doc. 82-1, pp. 2, 6-8. He also requests limitations on descriptions of the Taser deployment and an appropriate limiting instruction. *Id.* at pp. 2, 6-9. The Government has responded in opposition, contending that the pursuit and apprehension are intrinsic evidence connecting Defendant to the recovered drugs and firearm. R. Doc. 86, pp. 3-6.

The Government, meanwhile, seeks foundational determinations concerning five exhibits: certified St. Tammany Parish court records (Exhibit A, R. Doc. 85-2), certified Jefferson Parish court records (Exhibit B, R. Doc. 85-3), a firearm transaction record and purchase receipt (Exhibit C, R. Doc. 85-4); Louisiana Department of Public Safety and Corrections records (Exhibit D, R. Doc. 85-5); and a certification concerning the cell-phone extraction and extraction report (Exhibit E, R. Doc. 85-6). R. Doc. 85-1, pp. 1-6. It also seeks to dispense with witnesses whose testimony

---

[2] The Government has submitted video exhibits as manual attachments to its opposition to Defendant's Motion in Limine. R. Doc. 86-1.

[3] The descriptions in this paragraph merely summarize the Government's allegations and proffer. They are not findings that Defendant committed any of the charged conduct.

would otherwise establish the foundation for those records. *Id.*

The Government's notice separately seeks admission of the court and custody records; messages concerning drugs and firearms; photographs of drugs, drug-trafficking materials, currency, and a firearm recovered during a search and arrest that occurred on February 6, 2015; and officer testimony concerning the 2015 search and arrest. R. Doc. 84. A charge arising from that 2015 incident ultimately resulted in Defendant's 2017 Jefferson Parish felony conviction, which the Government also seeks to use to establish Defendant's status and knowledge. *Id.* at pp. 2-3. The Government represents that Defendant has declined its proposed stipulations concerning his prior conviction, pending felony information, and certain facts bearing on the firearms receipt. *Id.* at pp. 3-4. In opposition to the Government's request, Defendant principally argues that the Government has improperly characterized separate conduct as intrinsic evidence and that the proposed evidence is inadmissible under Rules 404(b) and 403. R. Doc. 88, pp. 1-8.

The Government's second Motion in Limine seeks to prevent Defendant from eliciting statements he made to Troopers Seruntine and Webster during an August 11, 2024 encounter at the jail. R. Doc. 89, pp. 1-2. The Government represents that it does not intend to introduce the recordings of that encounter. *Id.* Defendant has not responded to the motion, which is addressed separately below.[4]

## II. LAW AND ANALYSIS

### *A. Legal Standard*

This district has long disfavored motions in limine. *Auenson v. Lewis*, No. 94-2734, 1996 WL 457258, at *1 (E.D. La. Aug. 12, 1996) (internal citations omitted). "[A] motion in limine [ ]

[4] Although the Government filed this motion after the deadline for motions in limine, it represents that Defendant does not object to its consideration. R. Doc. 89-1, p. 2 n.1.

prohibit[s] opposing counsel 'from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' mind.' " *MGMTL, LLC v. Strategic Tech.*, No. 20-2138, 2022 WL 594894, at *2 (E.D. La. Feb. 28, 2022). Courts typically reserve evidentiary rulings until trial so that questions as to the evidence "may be resolved in the proper context." *Auenson*, 1996 WL 457258, at *1. "Denial of a motion in limine does not mean all evidence contemplated by the motion will be automatically admitted. Rather, denial means that the court cannot determine in advance whether the evidence should be excluded." *Auenson*, 1996 WL 457258, at *1.

The Federal Rules of Evidence govern the admissibility of evidence in the courtroom. Evidence must be relevant to be admissible. Fed. R. Evid. 401-02. Under Rule 401, "[e]vidence is relevant" if "it has any tendency to make a fact" that is "of consequence in determining the action" "more or less probable than it would be without the evidence." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

However, relevance is not the only inquiry the court must consider. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "'Unfair prejudice'. . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). "Relevant evidence is inherently prejudicial; but it is only *unfair prejudice*, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United*

*States v. Pace*, 10 F.3d 1106, 1115-16 (5th Cir. 1993) (emphasis added). "The exclusion of evidence under Rule 403 should occur only sparingly[.]" *Id.* "[E]vidence should not be excluded before trial unless it is clearly inadmissible on all potential grounds."[5] *Rivera v. Robinson*, 464 F. Supp. 3d 847, 853 (E.D. La. 2020).

Nevertheless, intrinsic evidence remains subject to Rule 403. *United States v. Sudeen*, 434 F.3d 384, 389 (5th Cir. 2005). Evidence is intrinsic when it is inextricably intertwined with the charged offense, forms part of the same criminal episode, or concerns necessary preliminaries to the charged offense. *United States v. Watkins*, 591 F.3d 780, 784 (5th Cir. 2009). This intrinsic evidence may establish the immediate context of the charged conduct and allow the jury to evaluate the circumstances in which the defendant acted. *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010). Intrinsic evidence does not implicate Rule 404(b)'s requirements. *Id.*; *Watkins*, 591 F.3d at 786. Its classification as intrinsic does not, however, resolve every objection to its content or presentation. *Sudeen*, 434 F.3d at 389; Fed. R. Evid. 403.

When flight is offered as circumstantial evidence of guilt, its probative value depends on the support for four inferences: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the charged crime; and (4) from consciousness of guilt concerning that crime to actual guilt. *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977). A flight instruction requires evidence reasonably supporting each inference. *Id.* at 1050; *United States v. Carrillo*, 660 F.3d 914, 926 (5th Cir. 2011). The timing and circumstances of the alleged flight, including explanations

[5] Additionally, courts may resolve evidentiary issues before trial while reserving particular applications that require a more developed factual context. Fed. R. Evid. 104(a)-(b); *Luce v. United States*, 469 U.S. 38, 41-42 & n.4 (1984). A ruling on a motion in limine remains subject to reconsideration as the evidence develops. *Luce*, 469 U.S. at 41-42.

unrelated to the charged offense, bear on that inquiry. *Myers*, 550 F.2d at 1049-51. Flight alone is insufficient to establish guilt, and the jury must determine whether flight occurred and what significance it has in light of all the evidence. *Carrillo*, 660 F.3d at 925-26 & n.4; *United States v. Williams*, 775 F.2d 1295, 1299-1300 (5th Cir. 1985).

District courts must also consider the rule against hearsay and associated exceptions set forth in Rules 801 through 807. "Hearsay" refers to an out-of-court statement that is offered "to prove the truth of the matter asserted," and such statements are inadmissible unless a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 801-02. The Federal Rules provide numerous exceptions to the general rule against hearsay, including those found within Rule 803, which sets forth a number of exceptions that apply "regardless of whether the declarant is available as a witness." Fed. R. Evid. 803. Under Rule 803(6), commonly referred to as the business records exception, a "record of an act, event, condition, opinion, or diagnosis" is not excluded if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Next, Rule 404(b) prohibits using "[e]vidence of any other crime, wrong or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character." Fed. R. Evid. 404(b)(1). However, such evidence "may be admissible for

another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). As recently explained by another section of this Court,

> For purposes of Rule 404(b), the phrase "any other crime, wrong, or act" refers to "only those acts that are 'extrinsic' to the crimes charged in the indictment." *United States v. Holmes*, No. 23-cr-229, 2025 WL 918701, at *2 (E.D. La. Mar. 26, 2025) (Vance, J.). Accordingly, evidence of an act "intrinsic" to the charged offense is not subject to the requirements of Rule 404(b) because an intrinsic act does not implicate the rule. *See United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010). Intrinsic evidence of other crimes, wrongs, or bad acts is "generally admissible." *United States v. Jimenez-Elvirez*, 862 F.3d 527, 536 (5th Cir. 2017).
>
> An "other act" is considered intrinsic (1) if the evidence of the other act and the evidence of the crime charged are inextricably intertwined, or (2) if both acts are part of a single criminal episode, or (3) if the other act was necessarily preliminary to the crime charged. *See id.* "Intrinsic evidence is admissible to complete the story of the crime by proving the immediate context of events in time and place and to evaluate all of the circumstances under which the defendant acted." *Rice*, 607 F.3d at 141 (internal quotation marks and citations omitted).
>
> If an act is extrinsic to the charged offense, courts apply a two-step test originating in the Fifth Circuit's opinion in *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc), to determine whether evidence of the act is admissible pursuant to Rule 404(b). *See United States v. Age*, 136 F.4th 193, 220 (5th Cir. 2025). The government bears the burden to demonstrate that evidence of an extrinsic act is admissible pursuant to Rule 404(b). *See United States v. Valenzuela*, 57 F.4th 518, 521 (5th Cir. 2023).
>
> At the first step, the court must determine whether "the extrinsic offense evidence is relevant to an issue other than the defendant's character." *Id.* (internal quotation citation omitted). "An extrinsic act is relevant to an issue other than the defendant's character if it is offered to prove one of the elements listed in Rule 404(b): 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.' " *United States v. Kinchen*, 729 F.3d 466, 472 (5th Cir. 2013) (quoting Fed. R. Evid. 404(b)). At this step, the relevance of an extrinsic act "is a function of its similarity to the offense charged" and is adjudged by the standards established by Federal Rule of Evidence 401. *See Beechum*, 582 F.2d at 911. "In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 689 (1988).

> At the second step, the court must ensure that the evidence "possess probative value that is not substantially outweighed by its undue prejudice" and meet the other requirements of Federal Rule of Evidence 403. *See Age*, 136 F.4th at 220 (internal quotation marks omitted). The probative value of extrinsic evidence is not measured absolutely. *See Beechum*, 582 F.2d at 914. Rather, the pertinent probative value of extrinsic evidence is its incremental probative value "with regard to the extent to which [the Rule 404(b) element at issue] is established by other evidence, stipulation, or inference." *See id.*; *United States v. Templeton*, 624 F.3d 215, 221 (5th Cir. 2010); *cf. Old Chief v. United States*, 519 U.S. 172, 184 (1997) (explaining that, for Rule 403 purposes, probative value is "calculated by comparing evidentiary alternatives").
>
> At this second step, courts consider (1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic act and the charged offense, (3) the amount of time separating the extrinsic act and the charged offense, and (4) the court's limiting instructions. *See Age*, 136 F.4th at 220. "The task for the court in its ascertainment of probative value and unfair prejudice under [R]ule 403 calls for a commonsense assessment of all the circumstances surrounding the extrinsic [act]." *Beechum*, 582 F.2d at 914.

*United States v. Dominick*, No. CR 24-44, 2025 WL 1593077, at *2–3 (E.D. La. June 5, 2025).

Additionally, before admitting evidence of Defendant's alleged other acts under Rule 404(b), the Court must determine whether sufficient evidence would permit a reasonable jury to find that the acts occurred and that Defendant committed them. *Huddleston*, 485 U.S. at 689-90. The Court does not resolve that conditional-relevance question by independently weighing credibility. *Id.* at 690. In addition, intrinsic status requires a connection between the other act and the charged conduct beyond mere relevance to the defendant's knowledge or intent. In *United States v. Lewis*, for example, the Fifth Circuit rejected the classification of social media posts, which endorsed manipulating or controlling women engaged in prostitution, as intrinsic to charges of sex trafficking and coercing or enticing interstate prostitution, finding that there was no evidence that the defendant used the platform to force or entice women to engage in commercial sex. 157 F.4th 415, 435-36 (5th Cir. 2025). Although the posts were relevant to the defendant's intent, their

admission required a separate Rule 404(b) analysis, which the Court concluded they satisfied. *Id.* at 435-36.

### *B. Defendant's Requests*

Defendant seeks to exclude or limit evidence and argument concerning the vehicle pursuit, the foot pursuit, and Taser deployment; to restrict the Government's use of those events as evidence of consciousness of guilt, and to obtain appropriate jury instructions concerning the jury's consideration of that evidence. R. Doc. 82-1, pp. 2-9. The Court addresses each requested exclusion category in the following subsections.

#### 1. **The Pursuit and Apprehension**

The Court declines to categorically exclude reference to the pursuit and apprehension of Defendant. On the Government's proffer, the troopers' observations during the vehicle and foot pursuits connect Defendant to the precise location where the firearm and drugs were recovered. R. Doc. 86, pp. 2, 5-6, 9. Observations of what he carried, where he moved, and what occurred at the fence bear directly on whether he possessed the items. That relevance does not depend solely on an inference that a person who runs must be guilty. Fed. R. Evid. 401. *See Rice*, 607 F.3d at 141 (recognizing the relevance of evidence establishing the immediate context of the charged conduct).

The asserted connection here is both temporal and factual: the pursuit immediately preceded recovery of the items, and the troopers allegedly observed Defendant's conduct throughout that sequence of events. Evidence of this continuous episode is intrinsic to the August 10, 2024 drug and firearm conduct charged in Counts 1 through 3. *See Rice*, 607 F.3d at 141 (upholding admission of acts that explained a unified criminal episode); *Watkins*, 591 F.3d at 784-86 (explaining that acts within a single criminal episode may be intrinsic and outside Rule 404(b)).

The absence of a separate flight charge does not require the Government to omit otherwise relevant circumstances of those offenses. *See Rice*, 607 F.3d at 141 (addressing unindicted offenses committed during the charged episode). Nor must each individual observation independently establish an entire element to be relevant. Fed. R. Evid. 401.

The Court does note, however, that this sequence of events is not necessarily intrinsic to all of the offenses charged in the Superseding Indictment. Count 4 concerns receipt of the firearm on June 23, 2024. R. Doc. 21, pp. 2-3. Evidence of possession on August 10 does not, by itself, establish receipt on the earlier date nor the other requirements of Count 4. The Court's ruling permits relevant proof of the August 10 events; it does not authorize an undifferentiated inference of guilt as to every count.

Additionally, under Rule 403, the core evidence provides substantial probative value because it links Defendant's movements and alleged handling of objects to the items found across the fence. The danger that jurors may react adversely to a police pursuit does not substantially outweigh that value on the present proffer. *See Sudeen*, 434 F.3d at 389 (applying Rule 403 to intrinsic evidence and recognizing that inculpatory evidence is naturally prejudicial). The Government therefore may present otherwise admissible testimony and recordings showing the relevant sequence, subject to the specific objections and limitations discussed below.

**2. <u>The Taser Deployment and Particular Details</u>**

The Court likewise declines to require that the Taser deployment be reduced categorically to a statement that Defendant was apprehended. The Government represents that the deployment occurred at the moment Defendant attempted to climb the fence, and that footage of his resulting movement may show a firearm in his hand. R. Doc. 86, p. 9. The Court's review of the manually

attached footage demonstrates that the sequence of events has significance beyond relaying to the jury that Defendant was apprehended because it may assist the jury in deciding whether he held the firearm and how the recovered objects came to rest across the fence. R. Doc. 86-1. Removing the deployment of the Taser without regard to that context could obscure the evidence bearing on possession. *See Rice*, 607 F.3d at 141 (permitting evidence of the immediate context needed to evaluate the defendant's conduct).

However, that conclusion does not necessarily approve every detail of the event. Defendant identifies potential testimony about vehicle speed, near-collisions, officers' fear, repeated commands, Taser cycles, and Defendant's physical reaction. R. Doc. 82-1, pp. 5-7. Whether a particular detail assists the jury or instead adds unfair prejudice or needless repetition depends on its content and context. *See, e.g.*, *Luce v. United States*, 469 U.S. 38, 41-42 (1984) (discussing the importance of factual context to evidentiary rulings); Fed. R. Evid. 403. A second camera angle may supply a useful view, or it may merely duplicate what the jury has already seen. The Court therefore defers objections to particular excerpts, audio statements, descriptions of force, and repeated presentations to trial. Intrinsic status alone does not establish the admissibility of every recorded statement. *See Sudeen*, 434 F.3d at 389 (requiring intrinsic evidence to satisfy Rule 403); Fed. R. Evid. 801-05.

Before presenting a disputed portion of a recording or testimony addressing these details, the proponent shall identify the particular material and its purpose outside the jury's presence. The Court will permit the context needed to evaluate the charged conduct while excluding material whose probative value is substantially outweighed by the dangers specified in Rule 403.

**3. <u>Consciousness of Guilt</u>**

Next, the Court finds that Defendant's request to foreclose every consciousness-of-guilt inference is too broad. In *United States v. Carrillo*, the Fifth Circuit upheld a flight instruction where the defendant drove off after an officer displayed a badge and the evidence supported that he possessed methamphetamine with intent to distribute during the encounter. 660 F.3d 914, 926 (5th Cir. 2011). Here, the proffered observations linking Defendant to drugs and a firearm during an immediate pursuit could similarly support a permissible inference. However, the facts of *Carrillo* are distinct: there, independent evidence had already placed the defendant in possession when he drove off, *id.* at 925-26. Here, possession is the contested fact, and the inference from flight is only as strong as the independent evidence placing the items in Defendant's hands.

The Court must assess that connection from the evidence actually introduced, rather than assume it from the Government's characterization of the conduct. *Myers*, 550 F.2d at 1049-51. The circumstances proffered by the Government—that Defendant was driving a stolen vehicle and was initially pursued for traffic violations—offer possible alternative explanations for his conduct. In *United States v. Myers*, the Fifth Circuit rejected the inference that flight shows conscious guilt of the charged crime where the defendant was known to have committed another offense that could independently account for his flight. *Id.* at 1050. Although the other offense here is alleged rather than established, those explanations still require consideration under *Myers*. The existence of another possible explanation does not defeat the inference where, as here, the Government proffers independent evidence that Defendant possessed the drugs and firearm during the flight. Unlike the uncertain or temporally remote conduct addressed in *Myers*, the Government proffers an immediate pursuit accompanied by observations of Defendant carrying objects toward the precise

location where the drugs and firearm were recovered. *Compare Myers*, 550 F.2d at 1049-51 (finding insufficient support for flight instruction where alleged flight was speculative, potentially attributable to another robbery, or remote from the charged offense), *with Carrillo*, 660 F.3d at 926 (upholding flight instruction where independent evidence established contemporaneous possession of methamphetamine with intent to distribute).

Subject to the Government establishing that proffer at trial, the Court will permit it to argue that Defendant's conduct supports an inference of consciousness of guilt concerning the August 10 offenses charged in Counts 1 through 3. Defendant may argue that his conduct had another explanation and that the inference should receive no weight. The Court may reconsider this ruling if the trial evidence does not support the necessary inferences. *See Luce*, 469 U.S. at 41-42.

Defendant's request is granted only to the extent it seeks to prohibit any argument that flight alone establishes guilt, that only guilty persons flee, or that Defendant should be convicted because he is generally lawless and dangerous. Flight, if established, remains but one circumstance to be evaluated with the other evidence; it does not substitute for proof of the charged elements. *Carrillo*, 660 F.3d at 925-26 & n.4; *United States v. Williams*, 775 F.2d 1295, 1299-1300 (5th Cir. 1985). The Government may describe conduct supported by admitted evidence, including that Defendant ran from his car or attempted to evade officers, and use the word "fled" to describe5 such conduct. Counsel may not, however, use labels such as "fleeing felon," "fugitive," "runner," or "flight risk" as character-based substitutes for proof of the offenses. *See* Fed. R. Evid. 403. The Court will resolve any dispute over a particular characterization in the context of trial upon contemporaneous objection.

4. **Jury Instructions**

Finally, the Court defers the precise wording and ultimate submission of the requested jury instructions until the trial evidence has developed. A Rule 404(b) limiting instruction is not required merely because evidence of the pursuit includes uncharged conduct intrinsic to the charged episode. *See Sudeen*, 434 F.3d at 389 n.16; *Age*, 136 F.4th at 223. Rule 105 nevertheless applies when evidence is admissible for one purpose but not another, and a timely request is made. Fed. R. Evid. 105. The evidence's intrinsic character does not, by itself, resolve the separate question of whether an instruction concerning the permissible inferences from alleged flight is warranted. As explained above, that determination depends on the inferences identified in *Myers*. *See Myers*, 550 F.2d at 1049–51. The Court thus defers the Government's proposed flight instruction until the evidence has developed. The parties shall be prepared to address at the charge conference whether the Government's proposed language, which tracks the instruction quoted in *Carrillo*, 660 F.3d at 926 n.4, fits the circumstances of a roadside pursuit. Defendant may renew a request for a contemporaneous instruction when the evidence is offered.

***C. Government's Requests***

The Government argues that because "the records described in Exhibits A-E are authentic and meet the requirements of Federal Rules of Evidence 803(6), 902(4), 902(11), 902(13), and 902(14)," they may "be admitted (subject to Rules 401 and 403) without the need to call record custodians." R. Doc. 85-1, p. 2. The Government suggests that doing so would "eliminate the need to incur the expense and inconvenience of producing time-consuming foundation witnesses" and "thereby streamline presentation of the evidence." R. Doc. 85-1, pp. 3-4. Defendant, responding in opposition to the Government's motion, argues that the Government "improperly attempts to

characterize substantial amounts of prior-crime evidence as 'intrinsic' to the charged offenses," contrary to Fifth Circuit jurisprudence. R. Doc. 88, p. 1. Defendant further argues that, to the extent that any of the evidence the Government seeks to admit does have legitimate relevance to Defendant's knowledge or intent, the Government has failed to "establish that the evidence is relevant for a permissible non-character purpose and that its probative value is not substantially outweighed by the danger of unfair prejudice under Rule 403." *Id.* at pp. 1-2. In analyzing these issues, the Court first addresses authentication and records foundations and then separately considers the permissible uses of the evidence under Rules 401, 403, and 404(b).

**1. <u>Authentication and Records Foundations</u>**

Rule 902(4) provides for self-authentication of a copy of an official record certified as correct by the custodian or by another authorized person. Fed. R. Evid. 902(4). Certified criminal judgments may satisfy that rule. *United States v. Dancy*, 861 F.2d 77, 79 (5th Cir. 1988), *abrogated on other grounds* by *Rehaif v. United States*, 588 U.S. 225 (2019). Certified court records may also fall within the public records exception to the hearsay rule. *United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999). These are two distinct inquiries: authentication establishes that a record is what it purports to be; it does not establish the truth or admissibility of every assertion in it. *See* Fed. R. Evid. 901(a), 902, 805; *Dancy*, 861 F.2d at 79-80 (separately addressing authentication and hearsay).

Here, Exhibits A and B contain court records certified by the respective clerks' offices. R. Docs. 85-2, 85-3. Defendant identifies no specific defect in those certifications. The Court thus finds that the certified copies satisfy Rule 902(4), and a records custodian need not appear solely to authenticate them. Official entries recording the filing of charges, an arraignment, a plea, or a

judgment may establish those procedural events. *See Fed. R. Evid.* 803(8)(A)(i); *Cantu*, 167 F.3d at 204. The extent to which these records may be presented to a jury is addressed in the following section.

Next, the Government argues that two exhibits, (1) "a firearms sales receipt" (Exhibit C) and (2) "documents from the Louisiana Department of Public Safety and Corrections" (Exhibit D), are subject to the business records exception set forth in Rule 803(6). R. Doc. 85-1, pp. 5-6. The Government contends that the five requirements for the business records exception are satisfied because "[e]ach certification provides that the record was made at or near the time of the event by someone with knowledge, that the record was kept in the course of a regularly conducted business activity, that making the record was a regular practice of that activity, and is attested to by a custodian of records." R. Doc. 85-1, pp. 5-6 (citing Fed. R. Evid. 803(6), 902(11)). Under Rule 902(11), a custodian's certification may establish the Rule 803(6) requirements if it complies with a federal statute or Supreme Court rule, after reasonable written notice and an opportunity to inspect the records and certification. Fed. R. Evid. 902(11). *See also United States v. Age*, 136 F.4th 193, 226 (5th Cir. 2025); *United States v. Roberson*, No. 25-210, 2026 WL 2336453, at *1–2 (E.D. La. Aug. 12, 2026).

The certification accompanying Exhibit C identifies the firearm transaction and purchase receipt and attests to the requirements of Rule 803(6)(A)-(C). R. Doc. 85-4. The corrections custodian's affidavit likewise attests to contemporaneous preparation by a person with knowledge, maintenance in the course of regular activity, and preparation as regular practice. R. Doc. 85-5. The Government furnished written notice through its September 4, 2026 filing and represents that the records were provided in the course of discovery. R. Doc. 85, p. 1; R. Doc. 85-1, p. 1.

Defendant's opposition identifies no particular deficiency in notice or access and makes no specific showing of untrustworthiness. *See* R. Doc. 88.

The Court finds that Exhibit D satisfies Rules 803(6) and 902(11). Routine corrections records documenting unambiguous administrative matters are distinguishable from reports investigating criminal conduct. *See United States v. Morgan*, 505 F.3d 322, 338-39 (5th Cir. 2007) (holding that business records are not testimonial and that the Confrontation Clause does not apply to foundational evidence authenticating them). As to Exhibit C, however, the dealer's signed statement recites the substantive requirements for the business records exception, but it contains no oath or declaration under penalty of perjury. Rule 902(11) requires a certification complying with a federal statute or a rule prescribed by the Supreme Court. The advisory committee's note to the 2000 amendment to Rule 902 explains that a declaration satisfying 28 U.S.C. § 1746 or a comparable certification under oath satisfies this requirement. Notarization is therefore unnecessary if the custodian instead signs and dates a declaration affirming the certification's truth under penalty of perjury in accordance with § 1746. The submitted certification, although signed and dated, is neither notarized nor signed under penalty of perjury. R. Doc. 85-4, p. 1. The Court therefore defers the foundational ruling on Exhibit C pending a compliant supplemental certification or another adequate foundation. Defendant must have a fair opportunity to inspect and challenge any supplemental certification before the records are offered. *See* Fed. R. Evid. 902(11). The Court additionally notes that these foundational determinations do not approve every statement embedded in the records or authorize presentation of the entire corrections file. Each offered portion remains subject to relevance, Rule 403, and any independent hearsay objection. *See* Fed. R. Evid. 401-03, 805; *Dancy*, 861 F.2d at 79-80.

Next, the Government seeks to admit the results of a digital extraction of Defendant's cell phone. R. Doc. 85-1, p. 6. The extraction in question was conducted by Louisiana State Police Technical Support Officer and FBI Digital Extraction Technician Malcolm Brown. *Id.* In support of its motion, the Government offers a certificate from TSO Brown, which "establishes that the extraction was generated by forensic software that creates an accurate and reliable result and that the extraction was authenticated by a process of digital identification." *Id.* (citing R. Doc. 85-6), pp. 1-2. Thus, the Government argues, the certificate satisfies the requirements of Rule 902(13) and (14), and Defendant's cell phone extraction is admissible without the need to call TSO Brown to authenticate the exhibit at trial. *Id.* (citing Fed. R. Evid. 902(13)-(14)).

Rules 902(13) and 902(14) permit certification, respectively, of records generated by an electronic process producing an accurate result and data copied from an electronic device and authenticated through digital identification. Fed. R. Evid. 902(13)-(14). Both incorporate certification and notice requirements. *Id.* They do not independently resolve hearsay, relevance, or authorship. Here, TSO Brown describes his training and experience, identifies the device and the August 26, 2024 extraction, and explains the process used to obtain and report the data. R. Doc. 85-6, pp. 1-2. He certifies the extraction's accuracy and describes the software's generation of a hash and confirmation of a successful extraction. R. Doc. 85-6, pp. 1-2. Thus, the Court finds that the certification satisfies Rules 902(13) and 902(14) for the identified extraction and report, and Brown need not testify solely to establish those matters.

However, the certification does not by itself establish that Defendant authored every communication or that a selected excerpt accurately presents all necessary context. The Government must connect the offered messages to the certified extraction and establish attribution

under Rule 901(a). Distinctive contents and surrounding circumstances may supply that foundation. *See* Fed. R. Evid. 901(b)(4); *Lewis*, 157 F.4th at 433-34 (upholding authentication based on identifying features and testimony linking defendant to account). The Government proffers that the phone was recovered from Defendant's vehicle and contained identifying photographs and communications. R. Doc. 84, p. 1 n.1. The Court will assess that foundation when offered at trial. Defendant's adequately attributed statements offered against him may satisfy Rule 801(d)(2)(A); other participants' statements require an independent basis for admission or a properly limited nonhearsay purpose. Fed. R. Evid. 801(c), 802, 805. Certification of the extraction does not convert every message into a business record. *See* Fed. R. Evid. 902(14) advisory committee's note to 2017 amendments.

**2. <u>Use of Conviction, Pending Information, and Custody Evidence</u>**

Defendant's contention that all earlier conviction and custody evidence must be extrinsic overlooks that portions of these records constitute direct proof of elements of Count 3 and 4, rather than other-act evidence offered to prove conduct by propensity. Count 3, for example, expressly places his qualifying conviction and knowledge of the same at issue. R. Doc. 21, p. 2. Count 4 concerns receipt of the firearm while under the identified felony information. R. Doc. 21, pp. 2-3; 18 U.S.C. §§ 921(a)(14), 922(n), 924(a)(1)(D). Records establishing those legal statuses and Defendant's awareness of them have relevance independent of any inference that he has a criminal disposition. *See, e.g.*, *Old Chief*, 519 U.S. at 186, 190-91 (addressing proof of felon status and the stipulation alternative).

On the present record, the Government may introduce appropriately limited portions of the Jefferson Parish judgment and plea records to establish the qualifying conviction and Defendant's

knowledge of it. *See* Fed. R. Evid. 803(22); *Dancy*, 861 F.2d at 79; *Rehaif*, 588 U.S. at 233-34. The Jefferson Parish plea colloquy, which reflects a five-year maximum sentence, bears directly on that knowledge. R. Doc. 85-3, p. 4. The Government may also introduce appropriately limited portions of the St. Tammany Parish information and arraignment records to establish only the charge, its procedural status, and notice to Defendant.[6] See Fed. R. Evid. 803(8)(A)(i); *Cantu*, 167 F.3d at 204. The Government may not treat the underlying accusation as proof that Defendant committed the aggravated assault alleged in the information. *See* Fed. R. Evid. 801(c), 805.

Accordingly, the Government must redact unrelated charges and convictions, including the domestic abuse allegations and prior domestic abuse conviction, as well as references to the dismissed counts in the Jefferson Parish records that are not necessary to identify the conviction at issue. *See* R. Doc. 85-2; R. Doc. 85-3. These redactions will limit the risk that the jury will infer guilt from unrelated criminal allegations while preserving the proof relevant to the charged elements. *See Old Chief*, 519 U.S. at 180-85; Fed. R. Evid. 403, 105. Absent a further showing of need, the records shall identify the qualifying conviction and the pending information as offenses punishable by imprisonment for more than one year, rather than by their factual nature. If Defendant offers to stipulate to the status elements, the Court will consider the effect of that offer on the Government's need for these records. *See Old Chief*, 519 U.S. at 190-92.

The limited corrections records also bear on Defendant's knowledge of his qualifying conviction and may bear on the chronology of the firearm's acquisition. Routine corrections entries may establish administrative facts without proving every allegation included elsewhere in the corrections file. *See Dancy*, 861 F.2d at 79-80. The firearm sales records identify a September 30,

[6] The Government must also establish the information's pendency at the relevant time because authentication alone does not establish every temporal proposition required by the charges brought in Count 4.

2018 purchase by a third party, and the Government proposes to relate that purchase to Defendant's arraignment and custody. R. Doc. 85-4; R. Doc. 84, p. 4. The Court permits relevant, noncumulative records for those purposes, subject to an adequate connection to the charged firearm and receipt. The parties shall present proposed redacted exhibits and any remaining disputes to the Court outside the jury's presence before displaying or describing the disputed contents.

**3. <u>Use of Drug-Related Text Messages</u>**

The text messages reproduced in the Government's notice concern earlier communications about drugs, sales, and access to Suboxone strips. R. Doc. 84, pp. 5-6. The present proffer does not establish that all of those communications formed part of the August 10 possession or were necessary preliminaries to it. Temporal proximity and similarity of subject matter alone do not supply that connection. The request to admit the entire category as intrinsic evidence is therefore denied. *See Kinchen*, 729 F.3d at 471; *Lewis*, 157 F.4th at 435-36.

Certain messages nevertheless satisfy the first part of *Beechum* for the limited purpose of proving distribution intent. Defendant's statements that he was trying to get people to buy "weed pills or whatever" and that a bag contained pills "that I be selling" describe distribution activity rather than mere possession or use. R. Doc. 84, pp. 5-6. Count 1 requires proof of intent to distribute, and the Government identifies a potential dispute over whether the substances were for personal use. *Id.* at p. 15. Evidence of earlier drug activity may bear on that state of mind. *See United States v. Thomas*, 348 F.3d 78, 86 (5th Cir. 2003) (upholding admission of prior drug-possession convictions to prove intent in drug-trafficking prosecution); *United States v. Peters*, 283 F.3d 300, 312-13 (5th Cir. 2002) (upholding admission of testimony concerning prior crack

cocaine sales to prove knowledge and intent). The difference between the drugs discussed and those charged does not itself make the evidence inadmissible, although it bears on the evidence's probative value. *See United States v. Cockrell*, 587 F.3d 674, 681-82 (5th Cir. 2009).

For these express statements of sales activity, the Court finds that the probative value is not substantially outweighed by unfair prejudice, subject to the foundation and limits stated herein. They address a material mental-state issue, were made within months of the charged conduct, and can be presented briefly without a separate trial of an earlier incident. Those considerations address the need, similarity, temporal proximity, and factors identified in *United States v. Kinchen* and *United States v. Cockrell*. *See Kinchen*, 729 F.3d at 473; *Cockrell*, 587 F.3d at 678-79. Their potential to invite propensity reasoning will be reduced by limiting the number of excerpts, removing unrelated personal matters, and instructing the jury on their permitted use. *See Peters*, 283 F.3d at 312-13; *Thomas*, 348 F.3d at 86; Fed. R. Evid. 105. The Court rejects, however, the Government's suggestion that the evidence cannot be unfairly prejudicial because it comes from Defendant's own phone. R. Doc. 84, p. 15. The source of a statement does not eliminate the Rule 403 inquiry. *See Old Chief*, 519 U.S. at 180-82.

The Government may therefore offer the two identified statements, with sufficient surrounding conversation to avoid a misleading presentation, after establishing attribution and any necessary explanation of their meaning. *See* Fed. R. Evid. 106, 901(a). Rule 106 permits admission of otherwise inadmissible hearsay when necessary to correct a misleading impression created by another party's introduction of a statement, but it does not authorize wholesale admission of unrelated material. *See United States v. Carpenter*, 140 F.4th 733, 740-41 & n.1 (5th Cir. 2025). The identified statements may be considered on the issue of intent to distribute under Count 1, but

not as proof that Defendant possessed the drugs or firearm merely because he engaged in prior drug activity. *See* Fed. R. Evid. 404(b)(1)-(2), 105; *Huddleston*, 485 U.S. at 691-92. This ruling does not admit the entire extraction or every drug-related message listed in the notice.

The remaining excerpts require a more specific showing. A reference to "strips," pills, or money does not necessarily establish distribution and may instead concern possession, personal use, or another transaction. The Court therefore defers a ruling on those excerpts until offered at trial. A prior drug reference is not admissible simply because the present charge involves drugs. *See United States v. Wallace*, 759 F.3d 486, 494 (5th Cir. 2014) (requiring the Government to establish relevance and admissibility in each case). Any explanation of coded terminology must have an admissible foundation. *See* Fed. R. Evid. 602, 701-02. Before mentioning an unapproved excerpt in opening statements or otherwise presenting it to the jury, the Government must obtain a ruling outside the jury's presence. *See* Fed. R. Evid. 103(d), 104(c)(3); *Luce*, 469 U.S. at 41-42.

**4. Use of Firearm-Related Text Messages and 2015 Firearm Evidence**

The Government seeks to introduce three messages in which Defendant references his possession of a firearm and his access to firearms. R. Doc. 84, p. 7. The present proffer does not identify the guns discussed as the Glock 20 Model identified in the Superseding Indictment. *Id.* One exchange expressly refers to Defendant "look[ing] into" acquiring a Glock 30 for the recipient. *Id.* The Government also seeks to introduce evidence that a different firearm was recovered in a prior arrest occurring in 2015. *Id.* at pp. 21-23. In support, it argues that Defendant's prior possession of a firearm is admissible under Rule 404(b) to prove his constructive possession of the firearm found on the other side of the fence during his 2024 arrest. *Id.*

The Fifth Circuit case of *United States v. Jones* requires a closer examination of that rationale. *See* 484 F.3d 783, 787-91 (5th Cir. 2007). There, an officer's observations of a defendant discarding an object where a gun was recovered supported a theory of actual possession, even though the gun was not on the defendant when he was apprehended. *Id.* at 788-89. The Court held that without additional evidence that the defendant controlled the location or the firearm, a speculative constructive possession alternative did not justify the admission of a prior firearm offense. *Id.* at 789-90. The critical question is therefore how the evidence connects Defendant to the firearm, not whether the Government characterizes its theory as constructive possession.

Here, the Government contends that the firearm was recovered immediately beyond the fence Defendant was attempting to cross and that body-camera footage depicts what appears to be a firearm in his hand. R. Doc. 86, pp. 1-3, 9. Those assertions principally support a theory of actual possession, or that Defendant physically held the charged firearm. *See Jones*, 484 F.3d at 789-91. Although the Government also invokes constructive possession, its present proffer does not explain how Defendant's earlier possession of another firearm would establish his knowledge of the charged firearm without inviting an inference that he possessed it because he possessed firearms in the past. Additionally, the Government has not identified a plausible connection between the earlier firearm and Defendant's alleged receipt of the Glock as charged in Count 4. *See* Fed. R. Evid. 401, 404(b)(2).

The Court also considers *United States v. Williams*, where a gun was found beneath the defendant's seat in a vehicle, thereby supplying a constructive possession theory even though the Government had also offered evidence of actual possession. 620 F.3d 483, 489-91 (5th Cir. 2010). Thus, evidence of actual possession does not categorically foreclose a separate, supported

constructive possession theory. *Id.* Here, however, the Government has not identified comparable control over the location where the charged gun was found. Similarly, in *United States v. Stuart*, prior firearm conduct helped identify the charged robber because the evidence connected the same gun to the earlier incident and the charged robberies. 132 F.4th 892, 900-01 (5th Cir. 2025). No comparable connection involving the same firearm has been established for either the text message exchanges or the 2015 firearm. These distinctions explain why the present exclusion is subject to reconsideration upon a materially different proffer.

Even assuming some relevance to knowledge or intent, the generalized inference from Defendant's earlier possession of other firearms adds little to the proffer regarding the charged Glock. On the present showing, that limited incremental value is substantially outweighed by the risk that jurors may infer possession merely from Defendant's prior association with guns, as well as the distraction of litigating the separate 2015 incident. Fed. R. Evid. 403; *Beechum*, 582 F.2d at 914-15; *Jones*, 484 F.3d at 790-91.

The Government's contention that the 2015 firearm possession was lawful does not eliminate this inquiry because Rule 404(b)'s restriction on propensity reasoning applies to another "crime, wrong, or act" of the defendant, which includes lawful conduct. Fed. R. Evid. 404(b)(1). Accordingly, on the present showing, the Court excludes the three firearm-related message exchanges and the firearm component of the 2015 incident. *See Beechum*, 582 F.2d at 911-12; *Jones*, 484 F.3d at 790-91 (holding that prior firearm possession was inadmissible to prove knowledge where the charged possession was actual and knowledge was not otherwise at issue). The Government may seek reconsideration outside the jury's presence upon a materially different proffer establishing a connection to the charged firearm or another concrete, non-propensity

purpose. Unless and until the Court permits their use, neither the messages nor the 2015 firearm may be mentioned in opening statement or otherwise referenced before the jury.

**5. Use of Drug Evidence from 2015 Search and Arrest**

The Government proposes the introduction of photographs and testimony from an officer who participated in the 2015 search, including evidence of heroin, packaging materials, scales, and currency. R. Doc. 84, pp. 7, 16-18. Such evidence may bear on knowledge or distribution intent if the Government sufficiently connects him to the alleged drug activity. *See Peters*, 283 F.3d at 312-13; *Huddleston*, 485 U.S. at 689-90. The resulting 2017 conviction, however, was for possession or distribution of a legend drug without a prescription, and the Jefferson Parish records reflect that the heroin count was dismissed. R. Doc. 85-3, pp. 1-3. Although the Government relies on that conviction to establish Defendant's felony status for Count 3, the conviction does not establish that he committed the separate heroin conduct. Any connection between Defendant and that conduct must therefore rest on evidence other than the conviction itself. *See* Fed. R. Evid. 803(22)(C) (limiting the use of a qualifying conviction to prove facts essential to the judgment).

The dismissal does not itself preclude proof of the underlying conduct under Rule 404(b). *See Williams*, 620 F.3d at 491-92 (applying Rule 404(b) to conduct not resulting in a conviction). The Government must, however, supply evidence sufficient to satisfy Rule 104(b), rather than rely on the fact of the arrest. *Huddleston*, 485 U.S. at 689-90. Because the record demonstrates that two people were in the residence, the larger cash amount was associated with the other defendant, and Defendant admitted to possession of tramadol and a firearm but denied the heroin, the Government's proffer must distinguish the drugs and currency attributed to Defendant from those attributed to another person present, identify the participating officer's personal knowledge, and

identify the actual photographs to be offered. *See* Fed. R. Evid. 602, 901(a). This ruling does not admit the police report or third-party accusations contained within it. *See* Fed. R. Evid. 803(8)(A)(ii)-(iii), 805; *Dancy*, 861 F.2d at 79-80 (distinguishing routine records from investigative observations); *Cantu*, 167 F.3d at 205-06 & n.34 (addressing concerns with relaying third-party accusations through law-enforcement testimony).

The nine-year interval between the 2015 search and arrest and the 2024 charged conduct is relevant but not dispositive. In *United States v. Arnold*, the Fifth Circuit upheld admission of a nine-year-old drug conviction where knowledge and intent concerning constructive possession were central issues. 467 F.3d 880, 885-86 (5th Cir. 2006). Likewise, the Fifth Circuit approved testimony about drug sales approximately ten years earlier where said testimony was probative of the relevant knowledge and intent in *United States v. Peters*. 283 F.3d at 312-13. Those decisions foreclose treating the passage of time alone as disqualifying, but they do not make old drug evidence automatically admissible. The Court must therefore assess how much the proposed 2015 evidence adds to the other evidence of Defendant's knowledge or intent and whether that additional probative value is substantially outweighed by the danger of unfair prejudice or needless duplication. While alleged heroin activity may have significant similarity to Count 1, reconstructing the disputed earlier event also risks unfair prejudice, confusion, delay, and cumulative proof. *See* Fed. R. Evid. 403; *Beechum*, 582 F.2d at 914-15. The absence of a conviction for the particular conduct heightens the need to assess the risk of punishment for an uncharged act. *See Williams*, 620 F.3d at 491. The Government's need must be assessed alongside its evidence concerning the charged conduct and the more recent messages permitted above. *Beechum*, 582 F.2d at 914-15; *Kinchen*, 729 F.3d at 473.

The Court therefore defers the request to admit the 2015 drug evidence pending a focused proffer outside the jury's presence, which the Government shall be prepared to make at trial. *See* Fed. R. Evid. 104(b), (c)(3); *Luce*, 469 U.S. at 41-42; *Beechum*, 582 F.2d at 914-15. The Government shall not refer to the 2015 search, arrest, or underlying drug allegations in opening statement or before the jury unless the Court first rules that the particular evidence may be introduced. *See* Fed. R. Evid. 103(d). This reservation does not affect the limited use of the 2017 conviction records to prove status and knowledge as discussed above. The Government may also renew the request if Defendant places knowledge, ownership, or third-party possession of the drugs at issue.

***D. Government's Motion in Limine Concerning Defendant's Self-Serving Hearsay Statements (R. Doc. 89)***

The Government additionally asks the Court to prohibit Defendant from eliciting his August 11, 2024, statements through the testimony of Louisiana State Police Troopers Seruntine and Webster, asserting that those statements are self-serving hearsay. R. Doc. 89-1, pp. 1-4. When a defendant offers his own out-of-court statements to prove the truth of the matter asserted, Rule 801(d)(2)(A) does not make them admissible merely because he is a party. That provision instead applies to statements offered against an opposing party. *See United States v. Bond*, 87 F.3d 695, 699-700 (5th Cir. 1996). A retrospective denial of the mental state required for the charged offense is not automatically admissible under the state-of-mind exception. *See United States v. Bishop*, 264 F.3d 535, 549 (5th Cir. 2001).

Nevertheless, describing a statement as self-serving does not resolve whether it is offered for its truth, falls within an exception, or must be admitted to complete another statement fairly. Rule 106 permits an adverse party to require contemporaneous introduction of another part of a

statement or another statement that fairness so requires, including over a hearsay objection. Fed. R. Evid. 106. In *United States v. Carpenter*, the Fifth Circuit confirmed that hearsay is not a categorical bar to necessary completion, while explaining that the rule does not permit a party simply to advance an alternative account of the events. 140 F.4th 733, 740-41 & n.1 (5th Cir. 2025).

The Government represents that it will not introduce the August 11 recordings at trial. R. Doc. 89-1, p. 2. If the Government does not introduce a statement requiring completion, then Rule 106 does not independently authorize Defendant to introduce his later denials merely because they contradict the prosecution's evidence. Conversely, if the Government introduces a portion of a statement in a manner that creates a misleading impression, the Court must assess whether the particular completing statement is necessary to correct that impression. *See Carpenter*, 140 F.4th at 740-41; Fed. R. Evid. 106 & advisory committee's note to 2023 amendment. The Court also notes that the Government's own proffer refers to Defendant's statements about ownership of the cross-body bag recovered on the other side of the fence containing an open bag of heroin on top of it. R. Doc. 84, p. 2. To the extent the Government offers any portion of a statement by Defendant, Rule 106 may entitle him to require the completing portion.

The Court therefore grants the Government's motion to the extent that Defendant may not elicit his own out-of-court statements through the troopers to prove the truth of the matters asserted, absent an applicable exception. The Court defers any ruling on completion under Rule 106 and on any nonhearsay purpose until the particular statements, their purposes, and the relevant trial context can be evaluated. Before eliciting or referring to a disputed August 11 statement before the jury, Defendant shall identify the precise statement and the asserted basis for admission outside

the jury's presence. Likewise, if the Government does intend to introduce any August 11 statement, it shall first notify the Court outside the jury's presence and obtain a ruling on admissibility.

## III. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendant's Motion in Limine to Exclude or Limit Evidence and Argument Concerning Alleged Flight, High-Speed Pursuit, Foot Pursuit, and Use of a Taser (R. Doc. 82) is **GRANTED IN PART** and **DENIED IN PART**, and the particular rulings identified herein are **DEFERRED**. The Court denies categorical exclusion of the vehicle pursuit, foot pursuit, and Taser deployment, subject to the limitations identified in Section II.B. The Government may make the conditional consciousness-of-guilt argument permitted in Section II.B.3 if the trial evidence supports its proffer. It may not argue that flight alone establishes guilt, that only guilty persons flee, or that Defendant's criminal character or dangerousness supplies a basis for conviction. Specific disputes remain reserved as stated above.

**IT IS FURTHER ORDERED** that the Government's Motion in Limine for a Determination that Records Meet the Requirements of Federal Rules of Evidence 803(6), 902(4), 902(11), 902(13), and 902(14) (R. Doc. 85) is **GRANTED IN PART** and its ruling is **DEFERRED IN PART**. Exhibits A and B satisfy Rule 902(4), Exhibit D satisfies the foundational requirements of Rules 803(6) and 902(11), and the identified extraction and report in Exhibit E satisfy Rules 902(13) and 902(14). The Court defers its determination concerning Exhibit C pending a compliant certification or another adequate foundation. The approved certifications dispense with testimony solely to establish the matters they cover. They do not authorize wholesale admission of the exhibits or resolve independent objections.

**IT IS FURTHER ORDERED** that the requests to introduce evidence identified in the Government's Notice of Intent to Introduce Intrinsic Acts Evidence and Extrinsic Acts Evidence Pursuant to Fed. R. Evid. 404(b) (R. Doc. 84) are **GRANTED IN PART, DENIED IN PART,** and **DEFERRED IN PART**, as follows:

1. Limited conviction, information, arraignment, and custody evidence may be introduced for the purposes and subject to the redactions and conditions stated in Section II.C.2. The firearm transaction records remain subject to the reserved foundational ruling in Section II.C.1.
2. The two express drug-sale statements identified in Section II.C.3 may be introduced for the limited purpose of proving distribution intent under Count 1, subject to attribution, necessary context, and the other stated conditions. Admission of the remaining drug-related excerpts is deferred to trial.
3. The three firearm-related message exchanges and the firearm component of the 2015 incident are excluded on the present proffer for the reasons stated in Section II.C.4, subject to reconsideration outside the jury's presence upon a materially different showing.
4. Admission of the drug-related photographs and testimony concerning the 2015 search and arrest is deferred pending the proffer described in Section II.C.5.

**IT IS FURTHER ORDERED** that the Government's Motion in Limine to Exclude Defendant's Self-Serving Hearsay Statements (R. Doc. 89) is **GRANTED IN PART** and **DEFERRED IN PART**. Defendant may not elicit his own out-of-court August 11, 2024 statements through the troopers to prove the truth of the matters asserted, absent an applicable

exception. A ruling on completion under Rule 106 and on any nonhearsay purpose is deferred to trial.

**IT IS FURTHER ORDERED** that neither party shall refer in opening statements or before the jury to the excluded evidence or evidence whose admissibility is reserved without first obtaining a ruling outside the jury's presence. These evidentiary rulings remain subject to reconsideration as the trial develops. *See* Fed. R. Evid. 103(d), 105; *Luce*, 469 U.S. at 41-42.

New Orleans, Louisiana, this 19th day of September 2026.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE